**KESSELMAN BRANTLY STOCKINGER LLP**
David W. Kesselman (SBN 203838)
dkesselman@kbslaw.com
Trevor V. Stockinger (SBN 226359)
tstockinger@kbslaw.com
Amy T. Brantly (SBN 210893)
abrantly@kbslaw.com
Abiel Garcia (SBN 289052)
agarcia@kbslaw.com
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
Tel.: 310-307-4555 | Fax: 310-307-4570

**GIBSON WUNDER P.C.**
Ethan Gibson (*PHV*)
ethan@gibsonwunder.com
4 Houston Center
1221 Lamar Street, Suite 1001
Houston, TX 77010
Tel: 713-897-8008 | Fax: 713-897-8007

*Attorneys for Plaintiff* PLUSPASS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PLUSPASS, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>VERRA MOBILITY CORP.,<br><br>            Defendant. | Case No. 2:20-CV-10078-FWS-SKx<br><br>Discovery Document: Referred to Magistrate Judge Steve Kim<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**<br><br>Hearing Date:    10/26/2022<br>Hearing Time:    10:00 a.m.<br><br>Discovery Cut-Off:    12/29/2022<br>Pre-Trial Conference   8/24/2023<br>Trial Date:        9/12/2023<br><br>SAC Filed:        4/27/2021 |

## I. PlusPass's Motion to compel on RFPs 91 and 92 is not moot.

With respect to the Court's first question in its October 6, 2022 Order, PlusPass's motion to compel is not moot for two reasons.

First, notwithstanding Verra's statements in its August 9, 2002 letter that it would make a limited production, Verra confirmed on September 13, 2022 – just days before PlusPass served its portion of the Joint Stipulation – that the parties had not reached an agreement on Request Nos. 91-94. Declaration of Abiel Garcia in Support of Joint Stipulation [DE# 120-1] ("Garcia Decl.") Ex. O. Verra has never amended its responses to Request Nos. 91 and 92 to state exactly what it intends – and does not intend – to produce, and more than a month after Verra "agreed" to produce documents, it appears no such documents have been produced. Declaration of Abiel Garcia in Support of Supplemental Memorandum ("Supp. Garcia Decl.") at ¶ 2.

Second, the documents Verra says it agreed to produce are insufficient to fully respond to Request Nos. 91 and 92. Request No. 91 seeks documents sufficient to identify error rates for Verra's administration of electronic toll payments for rental cars – including but not limited to "unmatched" rates. Garcia Decl. Ex. F at p. 7. Verra limited its proposed production of "unmatched data" to "the rate or instance in which tolls cannot be matched to a valid agreement." Declaration of David J. Norris in Support of Joint Stipulation Ex. 1 at p. 3. As PlusPass explained during the meet and confer process, this definition is too narrow. This is because it excludes data concerning other types of errors, such as toll charges matched to the wrong agreement or otherwise incorrectly applied. Supp. Garcia Decl. at ¶ 3. Additionally, while Verra stated it would produce some data, it did not agree to produce any documents responsive to Request 92, which sought documents ***analyzing any error rates***, including the causes or contributions to those rates. Garcia Decl. Ex. F at p. 7. As addressed herein, and in the Joint Stipulation, the strengths and weaknesses of Verra's technology are directly at issue in this case. Accordingly, PlusPass's motion to compel Verra to produce documents in response to Request Nos. 91 and 92 is not moot.

II.  **PlusPass Properly Seeks Customer Complaint Documents From Verra.**

In its October 6, 2022 Order, the Court inquired why Rent-a-Car ("RAC") customer complaint information is not more readily obtainable from the third party RACs. PlusPass has issued subpoenas to the major RACs, seeking relevant documents including documents related to customer complaints. Supp. Garcia Decl. at ¶ 4. Verra vociferously objected to PlusPass's subpoenas to Verra's RAC customers, stating that "PlusPass can and indeed must try to obtain most of the documents requested in the subpoenas [which included documents related to complaints] from Verra before involving third parties." Supp. Garcia Decl. ¶ 4 & Ex. Q. In addition to requesting the documents at issue from Verra, PlusPass continues to seek to enforce its subpoenas to the RACs. PlusPass has already filed motions to compel production that are pending against Avis and Hertz.[1] Supp. Garcia Decl. at ¶ 5. At this time, PlusPass has only received a material number of documents from one RAC, Enterprise. *Id*. Additionally, even if PlusPass succeeds in compelling Avis and Hertz to produce documents, various entities' document retention policies may limit the documents available for production. Further, as addressed below, the record supports that Verra has responsive documents; indeed, it has not argued otherwise.

    A.  **Evidence Suggests Consumers Could Directly Contact Verra Regarding Issues with Verra's Toll Administration Services.**

A review of RAC websites shows that some RACs direct customers to Verra for questions about tolling options and billing. Supp. Garcia Decl. at ¶¶ 6-9 & Exs. R-U. Additionally, documents produced by Verra demonstrate that rental car customers could and did contact Verra directly (and its predecessors HTA and ATS) and that Verra communicates with the RACs about consumer complaints. Because the documents were designated "Confidential" or "Highly Confidential – Attorneys Eyes Only," PlusPass proffers additional facts in the provisionally sealed Declaration of

---

[1] It appears evident that there is a coordinated stonewalling effort occurring between Verra and several of the major RACs.

Amy T. Brantly in Support of PlusPass's Supplemental Memorandum.

### B. Request No. 94 Seeks Documents Beyond The Actual Complaints Made By Rental Car Company Customers.

While complaints made by RAC customers would be responsive to Request 94, that request seeks other documents that are plainly within Verra's possession. Specifically, Request 94 also seeks "COMMUNICATIONS with rental car companies, related to quality control issues and/or customer complaints for YOUR administrative services" and data about quality control issues or complaints exchanged between Verra and the RACs. Garcia Decl. Ex. F at p. 8. While the RACS may have their own documents, there is simply no basis for Verra to refuse to produce its own communications, data, and analyses.

## III. PlusPass Properly Met and Conferred on the Requests at Issue

Verra's claims that the pre-filing discussions with PlusPass were limited to the issue of consumer complaints, and that PlusPass did not disclose its bases for seeking a variety of documents relating to the quality of Verra's services, are false.

Verra claims that its August 9, 2022 offer of limited error rate data concluded the parties discussions of Request Nos. 91-94 except for documents related to customer complaints. Jt. Stip. At 3:11-13. However, on August 15, 2022, PlusPass rejected Verra's limited offer, stating:

> [W]e are fully entitled to discovery allowing for a comparison of quality concerns relating to Verra's existing technology. Customer complaints **and internal analyses of Verra service and/or technical issues** are fully relevant.
>
> And obviously Verra is the repository for this information. Please confirm that responsive documents for each of [Requests 90-94] will be produced.

Garcia Decl. Ex. J at p. 2. While much of the parties' subsequent discussions did focus on the consumer complaint issue, that is because that was the primary relevance objection articulated by Verra. Supp. Garcia Decl at ¶ 10.  Throughout the process, PlusPass consistently maintained that documents reflecting problems with Verra's

technology – not just consumer complaints – were relevant and discoverable. *Id.*; Garcia Decl. Ex. N.

Likewise, Verra's complaint that PlusPass did not state during the meet and confer process that documents regarding technical issues and consumer complaints were relevant to issues of Verra's anticompetitive conduct and the foreclosure of consumer choice [Jt. Stip 20:3-7] is just wrong. Supp. Garcia Decl at ¶ 11. PlusPass explained its theory of relevance during the meet and confer discussions and reiterated it when it informed Verra on September 9, 2022 that it would move to compel, stating:

> As discussed, PlusPass has alleged that PlusPass's mobile app technology is more innovative and efficient than Verra's older technology. PlusPass has further alleged that Verra's anticompetitive conduct has effectively foreclosed PlusPass and others from competing in the market. Documents reflecting problem [sic] with Verra's technology, including error rates and complaints about quality, go directly to the anticompetitive effects flowing from Verra's efforts to stifle competition, i.e. the loss of innovation and consumer choice.

Garcia Decl. Ex. N. To the extent Verra complains that PlusPass did not identify every case and legal authority cited in the Joint Stipulation, its complaint is without merit. Local Rule 37-1 requires a meet and confer letter to "state briefly" the moving party's position and supporting legal authority – it does not require full legal briefing and exhaustive case citations before the meet and confer process has begun.

For these reasons, PlusPass satisfied its meet and confer requirements, and its motion to compel error rate data (Request No. 91), analyses of error rates (Request No. 92), documents analyzing problems with Verra's technology (Request No. 93), and documents relating to quality control issues and customer complaints (Request No. 94) are properly before the Court.

**IV.  Request Nos. 91-94 seek relevant and proportional discovery.**

Verra does not argue that documents concerning error rates or other technology issues (Request Nos. 91-93) are irrelevant, nor has it argued that producing the

requested documents would not be proportional to the needs of the case. Accordingly, PlusPass's motion with respect to these requests should be granted.

With respect to documents related to complaints from RAC customers (Request No. 94), the discovery sought is relevant and proportional. Verra does not deny that it intends to claim it obtained its dominant position in the market for the administration of electronic toll collection for rental cars based on the alleged superiority of its technology and services. Jt. Stip. pp. 18-19. However, Verra frames the issue as whether its products and services work properly and efficiently for the RACs, and claims the experience of RACs customers is irrelevant. However, complaints from RAC customers about the service provided by Verra go directly to whether Verra's products and services are working properly and efficiently for the RACs.

Verra's selective quotation of *Microsoft* is disingenuous. While the *Microsoft* Court did observe that customer satisfaction standing alone was not necessarily anti-competitive, in the language immediately preceding and after Verra's cited language, the DC Circuit found that the effect of restraints that cause dissatisfaction is anticompetitive where the restraints at issue foreclosed rivals from competing. *U.S. v. Microsoft Corp.*, 253 F.3d 34, 61-62 (D.C. Cir. 2001) (en banc). Verra's artificial efforts to distinguish the other antitrust case law cited by PlusPass are similarly without merit. The reality of this market is that Verra provides a service through the RACs that is ultimately used by end consumers. The Supreme Court has repeatedly made clear that in addressing antitrust cases, courts deal with market realities and not artificial constructs like what Verra is attempting to impose here. *See, e.g., Eastman Kodak*, 504 U.S. at 466-67 ("Legal presumptions that rest on formalistic distinctions rather than actual market realities are generally disfavored in antitrust law.")

## V.   CONCLUSION

For the reasons set forth herein, and in the Joint Stipulation, PlusPass respectfully requests that the Court grant its motion for compel Verra to produce the documents requested in Plus Pass's Request Nos. 91-94.

October 12, 2022

KESSELMAN BRANTLY STOCKINGER LLP
GIBSON WUNDER P.C.

By: *s/ Abiel Garcia*
David W. Kesselman
Trevor V. Stockinger
Amy T. Brantly
Abiel Garcia
Ethan Gibson

*Attorneys for Plaintiff* PLUSPASS, INC.

**ATTESTATION UNDER LOCAL RULE 5-4.3.4**

I am the ECF User whose ID and password are being used to file this Joint Stipulation. In compliance with Local Rule 5-4.3.4(a)(2), I hereby attest that Ethan Gibson has concurred with this filing.

Dated: October 12, 2022

KESSELMAN BRANTLY STOCKINGER LLP

By: *s/ Abiel Garcia*
Abiel Garcia

*Attorney for Plaintiff* PLUSPASS, INC.