SQUIRE PATTON BOGGS (US) LLP
Mark C. Dosker (CA Bar #114789)
Thomas J. Lloyd (CA Bar # 305507)
475 Sansome Street, Suite 1600
San Francisco, California 94111
Telephone:   (415) 954-0200
Facsimile:   (415) 393-9887
E-Mail:  mark.dosker@squirepb.com
          thomas.lloyd@squirepb.com

SQUIRE PATTON BOGGS (US) LLP
Brian A. Cabianca (*pro hac vice*)
David S. Norris (*pro hac vice*)
2325 E. Camelback Rd. Suite 700
Phoenix, AZ 85016
Telephone:   (602) 528-4000
Facsimile:   (602) 253-8129
E-Mail: brian.cabianca@squirepb.com
david.norris@squirepb.com

Attorneys for Defendant
VERRA MOBILITY CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PLUSPASS, INC.,<br><br>              Plaintiff,<br><br>   v.<br><br>VERRA MOBILITY CORP.,<br><br>              Defendant. | CASE NO.  2:20-CV-10078-FWS-SK<br><br>DISCOVERY MATTER<br>Before the Honorable Steve Kim<br><br>**DEFENDANT VERRA MOBILITY'S SUPPLEMENTAL BRIEF ON PLAINTIFF'S MOTION TO COMPEL**<br><br>Hearing Date:     10/26/2022<br>Discovery Cut-Off:  12/29/2022<br>Pre-Trial Conference  8/24/2023<br>Trial Date:        9/12/2023<br><br>SAC Filed:         4/27/2021 |

1    Pursuant to the Order for Supplemental Briefing on Plaintiff's Motion to

2 Compel (Doc. 121) (the "Order"), Defendant Verra Mobility Corporation ("Verra")

3 responds as follows to the two issues addressed to Verra in the Order:

4 **Issue No. 2**

5    The Order asks Verra to address whether it "amended its responses to RFPs

6 91 and 92 to remove withdrawn objections, to eliminate boilerplate objections, to

7 describe what specific objections it is relying on to withhold otherwise responsive

8 documents, and to explain what responsive documents (e.g., "error rate" data) it is

9 producing without objection." [Order at 1 (ECF 121).]

10    On July 28, 2022, PlusPass sent Verra a meet and confer letter regarding

11 RFPs 90–94. The meet and confer letter stated, *inter alia*, that: "PlusPass's Request

12 Nos. 90-94 specifically target various topics including: volume of vehicle traffic and

13 revenues for administrative services of electronic toll payment collection (Request

14 90), identified error rates for administrative services (Requests 91 and 92) . . . ."

15    On August 9, 2022, Verra sent PlusPass a meet and confer letter in response.

16 The letter provided that: "[I]n an effort to resolve this issue, Verra has agreed to

17 produce data regarding (1) the number of unique license plates that occurred a toll at

18 each tolling authority from 2016 to the date the data is pulled, and (2) data on the

19 "unmatched" rate—which is the rate or instance of tolls that cannot be matched to a

20 valid agreement—for RACs from January 1, 2016 to the date the data is pulled."

21 [Ex. 1 to Declaration of David S. Norris (ECF 120-2).] Verra did not formally

22 amend its responses to the requests for production because Verra had informed

23 PlusPass in writing of its supplemented response pursuant to Fed. R. Civ. P. 26(e)

24 ("A party who has . . . responded to a[] . . . request for production . . . must

25 supplement or correct its disclosure or response . . . *if* the additional or corrective

26 information has *not* otherwise been made known to the other parties during the

27 discovery process or in writing.") (emphases added).

28

1

PlusPass responded to Verra's amended position on August 15, 2022, stating that Verra's offer "to produce data regarding the number of unique license plates that incurred a toll at each tolling authority from 2016 onward and data on the unmatched rate for RACs from January 1, 2016 onward . . . responds to two requests (Request 91 and 92)." [Garcia Decl., Ex. J at 2 (ECF 120-1).] Following that agreement, the only issue the parties met and conferred about were consumer complaints, which is all Verra thought was still at issue. [*See, e.g., id.*, Exs. L & M.]

**Issue No. 4**

The Order further requested that Verra provide "more technical and operational specifics" demonstrating why it would be unduly burdensome for Verra to search for and produce "customer complaint information" pursuant to Plaintiff's Request for Production ("RFP") No. 94. [Order at 2 (ECF 121).]

Plaintiff's RFP No. 94 seeks consumer complaints from rental car companies' ("RACs") customers (rental car drivers) about Verra's toll services to the RACs. PlusPass contends that it needs "consumer complaints regarding Verra's technology and services" to test Verra's assertion that it offers superior products and services to the RACs.

As Verra explained in the Joint Stipulation, that request is disproportional and unduly burdensome because it would be enormously burdensome to search for, identify, and produce communications from rental car drivers that express complaints about Verra's technology and services.

Verra formed following the 2018 acquisition of Highway Toll Administration, LLC ("HTA") by ATS Consolidated, Inc. ("ATSC"). [Declaration of Michael Ries ("Ries Decl.") ¶ 3.] Since the acquisition, Verra's Customer Care department has received inquiries directly from rental car drivers and indirectly through Verra's customers—the RACs—who forward renter inquiries to Verra to respond on behalf of the RAC. [*Id.* ¶ 4.] Verra receives these inquiries through

2

several channels of communication, including: (1) by phone, (2) email, (3) letters in the mail, (4) fax, and (5) real-time online chat.  [*Id.*]

The Verra customer service representative who fields the renter communication creates an electronic note summarizing it in short-hand.  [*Id.* ¶ 5.] The representative also designates the communication as either "general information" or "dispute question," from a drop-down menu.  [*Id.*]  The "general information" designation is generally used for routine factual inquiries/requests for information from renters.  For example, it could include inquiries about making a payment, how to change payment methods, how to obtain a copy of a receipt, or how to navigate Verra's website.  [*Id.* ¶ 6.]  The "dispute question" designation is generally used for communications wherein a rental car driver is inquiring about a tolling-related charge for any one of a number of possible reasons, many of which have no bearing on the quality or efficacy of Verra's technology or services.  [*Id.*] For example, some drivers challenge the charge on the basis that even though they rented the vehicle at the time, someone else was allegedly driving it at the time of the toll charge or the vehicle was stolen.  [*Id.*]  Others may contend that a representative of the RAC did not adequately explain how the tolling service works. [*Id.*]

Since 2019 following the acquisition of HTA, the communications Verra has received and processed on behalf of its RAC customers (*i.e.,* recordings of phone calls, emails, letters, online chats, and faxes) have been stored in a database.  Verra stores the electronic notes of Verra customer service representatives in a separate database by various categories, such as rental agreement number, RAC, etc.  [*Id.* ¶ 8.]  The database cannot be queried by date, region, or keyword unless Verra representatives manually extract and export the data.  [*Id.*]  Even once Verra has manually extracted and exported the database, due to the short-hand nature of the summaries, Verra representatives would be required to perform a manual review of

each note to determine the nature of the communication, and to determine whether it is even a complaint that concerns Verra's technology and services, as opposed to the alleged fault of the RAC or the tolling authority, or even the fault of the individual renter.  [*Id.*]

Before the acquisition of HTA, ATSC followed the same process as Verra for creating and storing electronic short-hand notes of communications received from rental car drivers, but Verra is currently not aware of any central repository in which the underlying communications (*e.g.*, emails) were saved.  [*Id.* ¶ 10.]  In addition, HTA followed a different process that does not allow Verra to conduct a reliable electronic search for inquiries that HTA received from rental car drivers prior to the acquisition in 2018.  [*Id.*]  For example, among other things, HTA did not log inquiries and create electronic notes for each inquiry in a consistent manner.  [*Id.*]

The summary data Verra has for consumer inquiries further demonstrates the undertaking and cost that it would be required to bear in order to extract, export, query, review, analyze, and produce documents regarding renter complaints about Verra's technology or services.  By way of example, from 2016 through the present for Verra's three major toll management customers—Avis Budget Group, Enterprise Holdings, Inc., and The Hertz Corporation, but excluding HTA's data prior to the date HTA began using Verra's process—approximately 87 million rental car drivers utilized the toll services provided to the RACs by either Verra, HTA, or ATSC pursuant to the terms of the drivers' rental agreements with those RACs.  [*Id.* ¶ 11.] Over that same period of time, Verra received communication from 2.6% of drivers (approximately 2.3 million), of which approximately 800,000 (0.9% of all drivers) were categorized as some form of "dispute question" rather than a request for "general information."  [*Id.* ¶ 11.]

In addition to communications that result in stored electronic notes—like all businesses—Verra occasionally receives Better Business Bureau complaints related

1  to all of the products and services (not just tolling) it provides to RACs and other

2  customers such as fleet management companies, which Verra responds to on behalf

3  of its customers.  [*Id.* ¶ 12.]  Those complaints are not stored in a searchable

4  database and would have to be reviewed manually, on an individual basis, to

5  determine the relevance, if any, to the quality of Verra's technology and services.

6  [*Id.*]

7        The technical and operational specifics thus further demonstrate that it is

8  unduly burdensome for Verra to review and produce documents relating to any

9  complaints that it receives from rental car customers, and that such documents are

10  not proportional to the needs of this litigation.  PlusPass asks this Court to order

11  Verra to search through all documents relating to millions upon millions of inquiries

12  to determine whether Verra offers a superior product or service.  Yet Verra offers its

13  products and services to the RACs.  And the summary data for the example noted

14  above showing that less than 1% of the three major RACs' customers submit any

15  dispute sufficiently demonstrates that even if Verra produced all documents relating

16  to those 2.3 million communications, such documents could not possibly show

17  Verra's products are inferior based on the statistically insignificant rate (0.9%) of

18  "dispute questions" received.  That is particularly true since the majority of

19  communications within that 0.9% of all "dispute questions" will have nothing to do

20  with the quality and efficacy of Verra's technology or services.  It is therefore

21  unduly burdensome and not proportional for Verra to have to search for, review,

22  identify, and produce all "dispute questions" about its technology and services from

23  millions of documents when (at most) the summary data sufficiently demonstrates

24  the futility of PlusPass's demand.

25

26

27

28

VERRA'S SUPPLEMENTAL BRIEF ON
PLAINTIFF'S MOTION TO COMPEL
CASE NO.  2:20-CV-10078

Dated:  October 12, 2022

Respectfully submitted,

**SQUIRE PATTON BOGGS (US) LLP**

By:  */s/ David S. Norris*
David S. Norris

Attorneys for Defendant
VERRA MOBILITY CORPORATION

United States District Court Central District of California
Case No. 2:20-CV-10078-FWS-SK
*PLUSPASS, INC. V. VERRA MOBILITY CORP.*

**PROOF OF SERVICE**
(Pursuant to Federal Law)

The undersigned certifies and declares as follows:

I am a resident of the State of California and over 18 years of age and am not a party to this action.  My business address is 555 South Flower Street, 31st Floor Los Angeles, CA 90071, which is located in the county where any non-personal service described below took place.

On October 12, 2022, a copy of the following document(s):

**DEFENDANT VERRA MOBILITY'S SUPPLEMENTAL BRIEF ON PLAINTIFF'S MOTION TO COMPEL**

was served on:

**KESSELMAN BRANTLEY STOCKINGER LLP**
David W. Kesselman
dkesselman@kbslaw.com
Trevor V. Stockinger
tstockinger@kbslaw.com
Amy T. Brantly
abrantly@kbslaw.com
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
Tel: 310-307-4555
Fax: 310-307-4570

**GIBSON WUNDER P.C.**
Ethan Gibson *(Pro Hac Vice)*
ethan@gibsonwunder.com
4 Houston Center
1221 Lamar St. Ste. 1001
Houston, TX 77010
Tel: 713-897-8008
Fax: 713-897-8007

*Attorneys for Plaintiff PLUSPASS, INC*

Service was accomplished as follows.

☒             **By E-mail.**  By transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth above.

Executed on October 12, 2022, at Los Angeles, California.


_____
                    Shima Vasseghi