1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KESSELMAN BRANTLY STOCKINGER LLP**
David W. Kesselman (SBN 203838)
*dkesselman@kbslaw.com*
Trevor V. Stockinger (SBN 226359)
*tstockinger@kbslaw.com*
Amy T. Brantly (SBN 210893)
*abrantly@kbslaw.com*
Abiel Garcia (SBN 289052)
*agarcia@kbslaw.com*
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, CA 90266
Tel.: 310-307-4555 | Fax: 310-307-4570

**GIBSON WUNDER P.C.**
Ethan Gibson (*PHV*)
*ethan@gibsonwunder.com*
4 Houston Center
1221 Lamar Street, Suite 1001
Houston, TX 77010
Tel: 713-897-8008 | Fax: 713-897-8007

*Attorneys for Plaintiff* PLUSPASS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PLUSPASS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VERRA MOBILITY CORP., <br><br> Defendant. | Case No. 2:20-CV-10078-FWS-SKx <br><br> **PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING** <br><br> Date: September 26, 2023 <br> Time: 8:30 a.m. <br> Location: Courtroom 10D <br> Judge: Hon. Fred W. Slaughter |

1    Pursuant to the Court's September 25, 2023 Order, Plaintiff PlusPass, Inc.

2  ("PlusPass" or "Plaintiff") submits the following Proffer for the testimony of its

3  expert witness, Professor Einer Elhauge, in advance of the *Daubert* hearing

4  scheduled for September 26, 2023, along with the concurrently filed Exhibit List.

**PROFFER OF REGARDING EINER ELHAUGE'S**

**TESTIMONY AT *DAUBERT* HEARING**

7    1.    Because this is a hearing to address Defendant Verra Mobility Corp's

8  ("Verra" or "Defendant") *Daubert* motion, Plaintiff plans to proffer testimony by

9  Professor Elhauge on his qualifications, experience as an economics expert, and

10  responses to the critiques of his analysis that were made in Defendant's *Daubert*

11  motion.

12    2.    The full set of opinions that Professor Elhauge plans to offer at trial are

13  detailed in his expert report of April 12, 2023. Norris Decl. Ex. 39, Dkt. 174-4.

14  Because Defendant's *Daubert* motion only challenged a limited subset of those

15  opinions, the issues below on which Professor Elhauge will testify will be limited to

16  responses to those challenges.[1]

**RELEVANT PRODUCT MARKET**

18    3.    Defendant challenges two paragraphs of Professor Elhauge's analysis

19  on product market definition that offer qualitative reasons supporting the exclusion

20  of two potential substitutes – cash and tolling authority products – from the relevant

21  product market.

22    4.    Professor Elhauge will offer testimony that the main and sufficient

23  basis for his opinion that the relevant product market is electronic toll payment for

24  rental cars, or rental car ETP, rests not on the qualitative reasons in those two

---

[1]  PlusPass makes this Proffer specifically for the September 26, 2023 *Daubert*
hearing, and it is not intended to limit any portion of Professor Elhauge's opinions,
or the information in his report, that Verra did not challenge.

1  paragraphs, but rather on application of the hypothetical monopolist test.  He will

2  testify that this test:

    a.    Is widely accepted as a reliable method, including by both the
          government agencies and the Defendant's own economic expert.

    b.    That application of that test shows that a hypothetical 100%
          monopolist could raise prices by 5% over competitive levels in
          the posited market, because even as a near-100% monopolist,
          Verra was able to raise prices far more than that.

    c.    That Defendant's *Daubert* motion does not challenge his analysis
          of this pricing evidence and his application of the hypothetical
          monopolist test to the facts of this case.

    d.    That this test and pricing evidence alone shows that cash and
          tolling authority products must not be reasonably interchangeable
          with rental car ETP.

5.    That his application of this test and pricing evidence provides precisely
the methodology that the *It's My Party* opinion indicated was missing from the
market definition opinion that it excluded.

6.    Professor Elhauge will also offer testimony that his product market
definition is further confirmed by Defendant documents that identify only other
rental car ETP providers as close competitors and contracts that exclude only other
rental car ETP providers.

7.    As to Defendant's critiques of his qualitative arguments for why cash is
not reasonably interchangeable with rental car ETP, Professor Elhauge will offer
testimony that that Verra's *Daubert* motion errs when it argues that "Elhauge's basis
for excluding cash is his reading of IBTTA's TollMiner Data, which he uses to state
that only 8% of tolling facilities accepted cash payments in 2021," and that he
misread the data in doing so, because:

    a.    Defendant's claim that this was his only basis for excluding cash:

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR
EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

      i.      ignores all the pricing and documentary bases for excluding cash from the market.

      ii.     ignores other bases in the very paragraph they focus on, including that:

         1.     the trend is to eliminate cash as an option, as Defendant's own economics expert agreed.

         2.     fewer drivers want to pay cash and incur the required waiting time.

b.    Defendant mischaracterizes his claim because Professor Elhauge instead said only that "over 92% *of tolls collected* in the U.S. were at 'all electronic tolling' facilities ('AET') or 'open road tolling' ('ORT') facilities."  (emphasis added.)

c.    Defendant's critique rests on their expert Mr. Ling's reading of the data, which is mistaken.

d.    Defendant's critique ignores the evidence that only 5% of tolls are actually paid in cash.

e.    Defendant's argument that cash should be included in the relevant market is not supported by its own economics expert, who offers no such opinion.

8.    As to Defendant's critiques of Professor Elhauge's qualitative arguments for why tolling authority products are not reasonably interchangeable with rental car ETP, Professor Elhauge will offer testimony that Verra's *Daubert* motion claim that "The sole basis for this conclusion is Elhauge's personal opinion that toll authority products are less 'convenient[] and 'far more cumbersome' than using the PlusPass App" is inaccurate because:

a.    Defendant's claim that this was his sole basis for excluding tolling authority products:

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

i.     ignores all the pricing and documentary bases for excluding tolling authority products from the market.

ii.    ignores other bases in the very paragraph they focus on, including that:

    1.    the tolling authorities are engaged in toll collection and thus do not provide rental car electronic toll payment services.

    2.    there is no evidence that tolling authority products provide any significant share of rental car ETPs, and any claim that they do conflicts with Verra's own calculation that its market share was 99%, which indicates that even if they were in the relevant market, tolling authority products could not have more than 1% of the market.

b.    Defendant mischaracterizes Professor Elhauge's analysis, which is:

i.    based mainly on a comparison to *Verra's* own rental car ETP services.

ii.    based not on his personal opinions, but on economic analysis of the functionality of the products.  This includes the fact that using tolling authority apps would require renters to sign up with tolling authorities in each state in which they drive rented cars, and that Defendant's motion is incorrect that this conclusion is undermined by a finding from its economics expert.

c.    Defendant's argument that tolling authority products should be included in the relevant market is not supported by its own economics expert, who offers no such opinion.

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR
EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

## DAMAGES

9.     Defendant critiques five inputs to Professor Elhauge's damages analysis.  Professor Elhauge will offer testimony rebutting each of those critiques.

10.     <u>First</u>, as to Verra's critique that Professor Elhauge, when he estimated the but-for size of the now-foreclosed part of the relevant market, included certain states before PlusPass offered its app in those states, Professor Elhauge will testify that in a but-for world without the challenged restraints, PlusPass would have had incentives to offer its app earlier in those states.  He will also testify that this is consistent with the fact that he excludes states in which PlusPass does not currently offer its app because in the latter states there might be special political or technical obstacles to providing the PlusPass app.

11.     <u>Second</u>, on the but-for percentage of renters who would have used ETP apps, Verra claims that ridesharing and parking apps are not as good yardsticks as rental car company apps.  Professor Elhauge will offer testimony that the former are a better yardstick because:

      a.    like the apps at issue here, ridesharing and parking apps are apps related to vehicles that replaced legacy systems by offering mobile app services that electronically pay third parties.

      b.    rental car company apps provide no such service, but instead sign renters up for one of the rental car ETP plans provided by Verra, and thus provide no financial incentive to switch from Verra.

      c.    No defendant expert opines that rental car company apps were a better yardstick.

      d.    Verra's own internal analysis uses ridesharing and parking apps, not rental car company apps, to evaluate the appeal of rental car ETP apps.

12.     Professor Elhauge will further explain that:

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR
EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

a.    the ridesharing and parking app yardstick he used was limited to certain East Coast cities because the needed data was limited to those cities.

b.    James Sutton's deposition statement that he thought less than 10% of car renters were likely to use ETP apps was not a reliable yardstick.

13.    <u>Third</u>, on Defendant's critiques of Professor Elhauge's estimate that PlusPass would capture 75% of the rental car ETP app sales, Professor Elhauge will testify that:

a.    Verra's claim that he solely relied on PlusPass's "first mover" is inaccurate because he also relied on the facts that PlusPass:

    i.    had a patent that no rival had;

    ii.    had strong technological advantages over the only rival (PayTollo) that existed when the damages period started; and

    iii.    had strong price advantages over all rivals throughout the damages period.

b.    Verra's argument that, to estimate PlusPass's but-for share of *rental* car ETP apps, he should have used PlusPass's percentage of *non-rental* car ETP apps downloaded or rated, is mistaken because:

    i.    *Non-rental* car ETP app usage tells us little about but-for *rental* car ETP app usage because using apps is far more advantageous for rental cars.

    ii.    Downloads and ratings are not the same as actual usage in the United States, which would be affected by PlusPass' lower prices,

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

1           iii.       The number of worldwide downloads and ratings is a

2                        particularly dubious basis for measuring U.S. usage,

3                        given evidence that at least one rival app paid for

4                        downloads and another rival had a European owner.

5     14.    <u>Fourth</u>, on Defendant's critiques of Professor Elhauge's estimate of

6 PlusPass's but-for profitability, Professor Elhauge will testify that:

7           a.     Estimating that PlusPass's but-for price would have been 15% of

8                 tolls makes sense because:

9                 i.       That is not only the actual price that PlusPass charged for

10                        non-rental car use, but also the price that it charged and

11                        proposed for rental car use.

12                 ii.      The testimony of PlusPass's CEO about higher prices

13                        was predicated on the continuation of the challenged

14                        restraints and thus not indicative of but-for pricing

15                        without those restraints.

16                iii.     Using the lower but-for price estimate conservatively

17                        lowers estimated damages.

18           b.     Verra's argument that PlusPass's but-for profitability must be

19                 lower because PlusPass never turned a profit in the actual world

20                 ignores the fact that, in the actual world, the challenged restraints

21                 prevented PlusPass from growing to achieve the scale economies

22                 necessary to cover overhead costs.

23          c.     Verra's complaint that Professor Elhauge's estimate that Plus-

24                 Pass' but-for profit margin would have been 36.9% was based on

25                 using the yardstick of other firms that processed payments,

26                 instead of based on Uber's profit margin, is mistaken because:

27

28

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR
EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

1          i.      The yardstick Professor Elhauge used consisted of the firms that Verra itself identified as offering the best yardstick on profitability.

          ii.     None of Defendant's experts claimed that Uber's profits were a valid yardstick.

          iii.    Uber's net income is negative only because it has incurred large fixed costs to expand.  Its gross profits are higher than the 36.9% Professor Elhauge used.

    d.     Verra is mistaken in asserting that Professor Elhauge used a flawed 2017 PlusPass forecast to support his estimate that the but-for profit margin would be 36.9%.

    e.     Verra's critique of Professor Elhauge's estimated but-for profit margin ignores the fact his estimate is consistent with the findings of a Congressional Research Service Study on the costs of electronic tolling.

15.    <u>Fifth</u>, on Verra's claim that Professor Elhauge improperly relied on Mr. Zehnder's rebuttal report, Professor Elhauge will testify that:

    a.     He did not rely on Mr. Zehnder's rebuttal report in his own report or in forming any of his economic opinions in this case.

    b.     He did not assume that, in the but-for world, PlusPass would develop a backstop platform that would allow the use of rival tolling products at rental car firms.  Instead, he rather opined that in the but-for world, PlusPass, Verra, and other firms would have had the ability and incentives to do so, so that as an economic matter one would predict that some firm would do so.

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING

**CARTEL RINGMASTER THEORY**

16.    As to Defendant's challenge to certain statements within Professor Elhauge's report that refer to a cartel ringmaster theory, Professor Elhauge will testify that:

a.    Verra is mistaken that the cartel ringmaster theory assumes a horizontal agreement among the rental car companies on price.

b.    The cartel ringmaster theory he is using is consistent with allegations in PlusPass's operative complaint and interrogatory responses.

c.    Although the cartel ringmaster theory helps illuminate the relevant economic incentives in this case, it is not necessary for any of his ultimate conclusions.

DATED: September 25, 2023    Respectfully submitted,


By _____/s/ David W. Kesselman_____
                  David W. Kesselman


KESSELMAN BRANTLY STOCKINGER LLP
David W. Kesselman
Trevor T. Stockinger
Amy Brantly
Abiel Garcia

GIBSON WUNDER, P.C.
Ethan Gibson

Attorneys for Plaintiff PLUSPASS, INC.

PLAINTIFF PLUSPASS, INC.'S PROFFER OF EXPERT WITNESS PROFESSOR
EINER ELHAUGE'S TESTIMONY AT *DAUBERT* HEARING